Leo Kittay
Laura Popp-Rosenberg
Daniel Nuzzaci
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42nd, 17th Floor
New York, New York 10036
Tel. (212) 813-5900
*Email*: *lkittay@fzlz.com*
        *lpopp-rosenberg@fzlz.com*
        *dnuzzaci@fzlz.com*

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

OVERTIME SPORTS, INC.,

                             Plaintiff,

              v.                                      **COMPLAINT**

DICK'S SPORTING GOODS, INC. and                       **JURY TRIAL DEMAND**
AMERICAN SPORTS LICENSING, LLC,

                             Defendants.

Plaintiff Overtime Sports, Inc. ("Overtime" or "Plaintiff"), by its undersigned counsel, for its complaint against Defendant DICK'S Sporting Goods, Inc. ("DSG") and American Sports Licensing, LLC ("ASL"; together with DSG, "DICK'S" or "Defendant") alleges as follows:

<u>**SUBSTANCE OF THE ACTION**</u>

1.      Overtime is a leading brand in sports media and a champion of amateur youth athletes across the United States.

2.      Founded in 2016, Overtime has created an immensely successful social media-based sports network that uses innovative technology and new platforms to deliver original content to digital-native sports fans.

3.      In addition, over the last two years Overtime has developed a premium, design-driven clothing brand and online store, both under the OVERTIME mark, which feature a constantly shifting array of casual wear and accessories. Since its launch in 2018, the Overtime online store has offered over 260 different original OVERTIME-branded products including clothing, shoes, bags and sports accessories such as water bottles, wristbands, headbands and mouth guards.

4.      Overtime's online store and the products themselves have enjoyed enormous success in a short period of time. In only two years, Overtime has sold millions of dollars in merchandise. Some of the most famous names in sports have worn OVERTIME apparel, including Odell Beckham Jr., Carmelo Anthony, Dwyane Wade, Kevin Durant, and many more NBA and NFL players. Many of Overtime's most popular items sell out in only 24 or 48 hours.

5.      Upon information and belief, Defendant is one of the country's largest sporting goods retailers with hundreds of DICK'S SPORTING GOODS stores nationwide that each offer a range of apparel and sports merchandise.

6.      On June 16, 2020, despite evidence that it was aware of Overtime and its trademark rights, Defendant announced that it would immediately open three retail Northeast locations under the trademark OVERTIME. The three locations are now open for business and feature enormous storefront signage displaying the OVERTIME mark. To make matters worse, Defendant designated these locations as deep-discount retail outlets and, upon information and belief, stocked them with an assortment of apparel, footwear and equipment at greatly reduced prices, including up to 75% off.

7.      Defendant's launch of a deep-discount retail chain under Overtime's identical trademark to sell to sporting enthusiasts precisely the same categories of apparel and sports

accessories that Overtime has been offering for years inevitably damages Overtime, causes immediate and irreparable harm to Overtime, and threatens to deceive the public.

8.     Accordingly, Overtime asserts claims for trademark infringement and unfair competition under Section 43(a) of the Trademark Act, 15 U.S.C. § 1125(a), and substantial and related claims under New York unfair competition law. Overtime seeks injunctive relief to prevent further injury, as well as monetary relief in the form of Overtime's damages, punitive damages, profits of Defendant, attorneys' fees, interest, and such other relief as the Court deems just and proper.

## THE PARTIES

9.     Plaintiff Overtime Sports, Inc. is a Delaware corporation having a principal place of business at 20 Jay Street, Suite 600, Brooklyn, New York 11201. Overtime is the owner of the OVERTIME mark in connection with, *inter alia*, apparel and sports accessories and online retail store services therefor.

10.     Upon information and belief, Defendant DICK'S Sporting Goods, Inc. is a corporation organized and existing under the laws of Delaware with an address of 345 Court Street, Coraopolis, Pennsylvania 15108. Upon information and belief, DSG recently began conducting business under the OVERTIME trademark.

11.     Upon information and belief, Defendant American Sports Licensing, LLC is a corporation organized and existing under the laws of Delaware with an address of 345 Court Street, Coraopolis, Pennsylvania 15108. Upon information and belief, Defendant American Sports Licensing, LLC is an affiliate of DSG and the owner of certain trademark filings relating to DSG's business.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b). The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

13.     The Court has personal jurisdiction over Defendant under Sections 301 and/or 302 of the New York Civil Practice Laws and Rules because (i) Defendant transacts business in the state, regularly does or solicits business in the state, and/or derives substantial revenue from goods used or consumed or services rendered in the state ; and (ii) the events giving rise to this Complaint had effects in this State.

14.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(c)(2) because Defendant transacts business and maintains retail locations in this District, thereby residing in this jurisdiction and making it subject to personal jurisdiction in this State.

## FACTS GIVING RISE TO THIS ACTION

### A.     Overtime Sports, Inc. and its Overtime Mark

15.     Overtime is a sports network and clothing and lifestyle brand focused on young, digital-native sports fans. Since 2016, the company has offered sports-related entertainment programming on multiple platforms including Instagram, Twitter, Facebook, YouTube, Snapchat, TikTok, Overtime's website (https://overtime.tv/) and television.

16.     As a company, Overtime is dedicated to giving a national stage to the talents and stories of the country's most inspiring young athletes. It first achieved renown for publishing sports videos, including highlights of high school sporting events, on its social media channels

and has since expanded into producing and displaying a variety of original programming, presenting live events and offering branded merchandise.

17.     Overtime's popularity has exploded in the few years since its launch. Overtime's entertainment content has approximately 1.6 billion views per month and over 37 million followers across its digital platforms. Its audience now views over 400 million minutes of Overtime's content each month.

18.     Besides its celebrated content, the other fundamental pillar of Overtime's business is its online store and product line. Overtime distributed OVERTIME-branded apparel beginning in its early days and featured it in its content. Overtime then launched its OVERTIME online store in 2018 to sell its OVERTIME-branded apparel and sports accessories to consumers. Overtime now offers a variety of premium OVERTIME-branded clothing, shoes, and accessories all sold under the mark OVERTIME. And Overtime's retail store operates under the OVERTIME mark, is located at the URL *shop.overtime.tv*, features a browser favicon that reads "Shop Overtime," and displays the OVERTIME mark across the top of the store's home page, as shown here:





19.     In only two years, Overtime has sold millions of dollars in merchandise through its OVERTIME store. The store features well-over 100 items of originally designed clothing and accessories at any given time, all branded with Overtime's indicia. Overtime designs, manufactures and sells items for its label. Overtime has co-branded with such famous clothing brands as Converse. Some of the most iconic brands in sportswear, including Nike, adidas, and Under Armor, promote Overtime's content. In addition, Overtime designs products in collaboration with famous artists, personalities and designers, including without limitation Sierato, Chinatown Market, Baron Davis and Darryl Brown.

20.     A sampling from Overtime's current product line and labelling is shown here:





21.     Overtime has spent hundreds of thousands of dollars advertising and promoting its OVERTIME-branded products and its OVERTIME store across a variety of mediums, including in news articles, social media, and online advertising. In 2019 alone, social media advertisements for OVERTIME-branded products generated 38 million separate consumer impressions.

22.     A sampling of Overtime's marketing materials are shown here;







23.     Consumers have embraced the OVERTIME brand nationwide. Through Overtime's online store, more than 50,000 items have been sold to date, including into every one of the 50 United States. Sales of OVERTIME products are in the millions of dollars.

24.     The media has also embraced the brand. Overtime's business and goods have been the subject of articles in major national publications, including *The Wall Street Journal*, *USA Today*, *GQ*, *Sports Illustrated*, *Forbes*, *Variety*, *AdWeek*, *Business Insider*, and CNBC, among others. Overtime has been featured on national television programs, including, ESPN and MSNBC. The publicity garnered by Overtime and its products has exposed the OVERTIME brand to a broad base of U.S. consumers.

25.     A key demographic of Overtime's consumer base are urban sports fans, with a particularly strong representation of those living in the Northeast.

26.     In part to dissuade third parties from adopting a similar mark, more than two years ago on May 8, 2018, Overtime filed U.S. trademark Application Serial No. 87/911,538 for the mark OVERTIME in connection with the goods and services related to its business, including without limitation "Online retail store services featuring apparel, sports equipment . . ." in International Class 35 and "Clothing and apparel, namely, t-shirts, shirts, tank tops, sweatshirts, hooded sweat shirts, headwear, shorts" in International Class 25 (the "Overtime Application"). The Overtime Application is pending and publicly available at the United States Patent & Trademark Office (the "USPTO") website.

27.     As a result of Overtime's efforts and the tremendous success of Overtime's products, Overtime's trademark has come to identify Overtime exclusively and uniquely in its field.

28.     The OVERTIME trademark represents enormous goodwill, signifying products and services that are of the highest quality and that derive exclusively from Overtime.

29.     Overtime will suffer irreparable harm if Defendant is allowed to trade on Overtime's reputation and goodwill by offering goods and services under the OVERTIME mark.

**B.**     **DICK'S Bad Faith Adoption of the OVERTIME Mark**

30.     Upon information and belief, Defendant is a sports retailer that has operated under the trademark DICK'S SPORTING GOODS – or just DICK'S – for decades. It offers both online and brick-and-mortar retail services for apparel, sports accessories and sporting equipment. Its stores carry an array of third-party products as well as products sold under Defendant's own brands, such as its "DSG" brand clothing.

31.     On June 16, 2020, without warning to or authorization of any kind from Overtime, Defendant announced that it would open three stores under the name OVERTIME in Plainville, Connecticut, in Hagerstown, Maryland, and Philadelphia, Pennsylvania. According to the press release, Defendant's OVERTIME stores would offer "apparel, footwear and [sports] equipment at up to 75% off," by "Nike, adidas, Under Armour and other brands customers have enjoyed shopping for at DICK'S locations for many years." Defendant announced that its plans are to operate these store "for the foreseeable future."

32.     Upon information and belief, Plaintiff's OVERTIME stores in Connecticut and Maryland opened on June 17, 2020, while Plaintiff's OVERTIME store in Philadelphia opened on June 24, 2020.

33.     Upon information and belief, each of Defendant's three OVERTIME-branded locations display the word OVERTIME, in signage over the front entrance, as shown here:



34.     In addition, the OVERTIME mark is on display upon in-store signage and printed

receipts, as shown here:





35.     Defendant has never been associated with Overtime and has never been

authorized to use or to trade on Overtime's OVERTIME mark.

36.     Defendant's activities under the OVERTIME mark falsely suggest to consumers that Defendant's products and services are associated with or have the approval or authorization of Overtime when they do not.

**C.     Defendant's Knowing and Willful Adoption of the Infringing Mark**

37.     Defendant's conduct – specifically, its trademark filing strategy – indicates that it adopted the OVERTIME mark with full knowledge of Overtime's rights in the mark for retail store services and proceeded willfully.

38.     In the same press release announcing its new OVERTIME retail concept, Defendant also announced that it would open five clearance stores under the trademark "DICK'S Sporting Goods Warehouse Sale." According to the press release, the DICK'S SPORTING GOODS WAREHOUSE SALE stores would offer apparel and footwear at "deeper discounts" than those found at Defendant's OVERTIME stores, namely "up to 90% off." These "deeper discount" locations are predominantly in the Mid-West and, according to Defendant's press release, will provide a "temporary pop-up-style shopping experience for customers in these communities over the next six months."

39.     A review of the records of the USPTO indicates that, even though Defendant was adopting two new trademarks on the same day in connection with a coordinated two-tiered discount retailing strategy, it chose a wholly different trademark registration strategy for its DICK'S SPORTING GOODS WAREHOUSE SALE mark than it did for its OVERTIME mark.

40.     Even though the DICK'S SPORTING GOODS WAREHOUSE SALE mark is highly similar to its longstanding DICK'S SPORTING GOODS trademark and even though it is to be used for only six months in pop-up style locations, Defendant nonetheless filed two U.S. trademark applications for the mark, one for the mark DICK'S SPORTING GOODS

WAREHOUSE and another for the virtually identical mark DICK'S SPORTING GOODS WAREHOUSE SALE. Both applications cover retail services in International Class 35, and both were filed on July 18, 2020.

41.     In contrast, Defendant filed no trademark application for the OVERTIME mark in any form.

42.     Upon information and belief, Defendant elected to file applications for the DICK'S SPORTING GOODS WAREHOUSE SALE marks but not for any OVERTIME-formative marks because Defendant knew of Overtime's trademark rights, including its prior-filed application for OVERTIME in connection with retail store services in International Class 35.

43.     Upon information and belief, Defendant's infringing conduct is knowing, willful, in bad faith and is likely to cause confusion and to deceive the public.

44.     The OVERTIME mark is vital to Overtime, and Overtime will suffer substantial and irreparable harm if Defendant is permitted to trade on Overtime's rights and goodwill by offering clothing and retail services under the OVERTIME mark. The goodwill that Overtime has built up in its OVERTIME mark through years of substantial investment and effort is put at risk by virtue of Defendant's actions.

45.     Defendant's actions have caused and will continue to cause irreparable harm to Overtime unless permanently enjoined. Overtime has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement and Unfair Competition under the Lanham Act**
**(15 U.S.C. § 1125(a))**

46.     Overtime repeats and realleges the paragraphs above as if fully set forth herein.

47.     By virtue of its long use and advertising of the OVERTIME mark in connection with retail store services, Overtime has acquired nationwide, common law trademark rights in this mark.

48.     Overtime's rights in the OVERTIME mark throughout the United States in connection with retail store services developed prior to any use by Defendant of the OVERTIME mark.

49.     Defendant's OVERTIME mark used in connection with its retail store services is confusingly similar to Plaintiff's OVERTIME mark.

50.     Defendant's retail store services offered under the OVERTIME mark are similar to the goods and services offered by Overtime under the OVERTIME mark and are marketed and/or sold to the same consumers in the same geographic regions.

51.     Upon information and belief, prior to its launch of OVERTIME locations, Defendant was on actual notice of Plaintiff's exclusive rights in the OVERTIME mark. Defendant's actions are therefore in bad faith, with full knowledge of Plaintiff's prior use of, exclusive rights in and ownership of the OVERTIME mark, with full knowledge of the goodwill and reputation associated with the OVERTIME mark, and with full knowledge that Defendant has no established right, license or authority to use the OVERTIME mark in connection with any retail store services.

52.     Defendant's knowing and intentional offering of retail store services under the OVERTIME mark constitutes a false designation of origin and a false representation that Defendant's services originate from, or are offered, sponsored, authorized, licensed by or otherwise somehow connected with Plaintiff, and is thereby likely to cause confusion or to cause mistake or to deceive consumers and the public as to the affiliation, connection or association

between Defendant and Plaintiff, and/or as to the origin, sponsorship or approval of Defendant's services.

53.     Defendant's actions constitute willful trademark infringement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.     Defendant's use of the OVERTIME mark has harmed and threatens to destroy the value, exclusivity and reputation of Plaintiff's OVERTIME brand and mark.

55.     Defendant's conduct has caused and is causing immediate and irreparable injury to Overtime and will continue to damage Overtime unless enjoined by this Court. Overtime has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### Trademark Infringement and Unfair Competition under New York Common Law

56.     Overtime repeats and realleges the paragraphs above as if fully set forth herein.

57.     When used in connection with apparel and retail store services, the OVERTIME mark is identified and associated in consumers' minds exclusively with Overtime and its goods and services.

58.     By virtue of Defendant's use of the OVERTIME mark in connection with retail store services, the public is likely to be deceived as to the source of Defendant's goods and services or as to the relationship between Defendant and Overtime, and thereby harmed.

59.     Defendant's activities under the OVERTIME mark began after Plaintiff's OVERTIME mark became associated by consumers exclusively with Overtime.

60.     Defendant's activities under the OVERTIME mark are with full knowledge of Plaintiff's prior rights and of the renown and success of Plaintiff's goods and services. Defendant's actions are for the willful purpose of misappropriating and trading on Plaintiff's

goodwill and business reputation in violation of Plaintiff's rights under the common law of the State of New York.

61.    Defendant's conduct in relation to retail store services is willful, in bad faith, and with full knowledge of Plaintiff's prior use of, exclusive rights in, and ownership of the OVERTIME mark and the reputation and goodwill associated with this mark. By its actions, Defendant has been unjustly enriched and Overtime has been damaged.

62.    The aforesaid conduct of Defendant constitutes unfair competition and trademark infringement under the common law of the State of New York.

63.    Defendant's conduct is harming the public and has caused and is causing immediate and irreparable injury to Overtime and will continue to harm the public and damage Overtime unless enjoined by this Court. Overtime has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**Dilution of Plaintiff's Mark under New York Law**
**(N.Y. General Business Law § 360-*l*)**

64.    Overtime repeats and realleges the paragraphs above as if fully set forth herein.

65.    As a result of extensive use and promotion of the OVERTIME mark for years, the OVERTIME mark has become well-known in the State of New York, is distinctive of Plaintiff, and is widely recognized among consumers as a designation of source of Plaintiff's goods and services.

66.    Defendant's OVERTIME mark is substantially similar, if not identical, to Plaintiff's OVERTIME mark and otherwise calls to mind Plaintiff's OVERTIME mark.

67.    Defendant's commercial use of the OVERTIME mark in connection with retail store services is diluting and is likely to continue to dilute Plaintiff's well-known OVERTIME

mark by impairing its distinctiveness, thereby lessening the capacity of the mark to identify and distinguish Overtime exclusively in violation of N.Y. General Business Law § 360-*l*.

68.     Defendant's conduct has caused and is causing immediate and irreparable injury to Overtime and will continue to damage Overtime unless enjoined by this Court. Overtime has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Overtime respectfully demands judgment as follows:

1)     That a preliminary and permanent injunction be issued against Defendant, and any companies owned or controlled by Defendant, and each of their officers, agents, privies, principals, directors, shareholders, managing agents, owners, licensees, distributors, servants, attorneys, employees, affiliates, subsidiaries, parents, successors and assigns, and all of those in active concert or participation with any of them who receive notice directly or otherwise, enjoining and restraining them from:

a.     using Plaintiff's mark OVERTIME, any mark that wholly incorporates OVERTIME, or any other name or mark that is confusingly similar to Plaintiff's OVERTIME mark, or is a derivation or colorable imitation thereof, regardless of whether used alone or with other terms (collectively, "Prohibited Marks") in connection with manufacturing, producing, soliciting orders for, offering for sale, making available, selling, accepting offers for, filling orders for, promoting, advertising, marketing or distributing any goods or services;

b.     using any Prohibited Marks in or as part of any corporate name, trademark, service mark, domain name, trade name, business name, fictitious name,

social media designation, or other designation of source on, in connection with, or otherwise to refer to or identify any goods, business or service;

  c.  offering, advertising or promoting any products or services under any name that includes any Prohibited Marks;

  d.  using any Prohibited Marks in a manner, or performing any act, that can, or is likely to, lead members of the trade or public to believe that Defendant or its products are sponsored by, associated with, authorized by, endorsed by, or otherwise associated with Plaintiff;

  e.  engaging in any other activity constituting unfair competition with Plaintiff or constituting an infringement of or diluting Plaintiff's OVERTIME mark or otherwise damaging Plaintiff's goodwill in the OVERTIME mark;

  f.  applying to register, filing, registering, maintaining or retaining any registration or application to register any Prohibited Marks in the United States Patent and Trademark Office or the trademark office of any state; and

  g.  instructing, assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (f), or taking any action that contributes to any of the activities referred to in subparagraphs (a) through (f) above.

2)  Directing Defendant to recall any products and any related advertising or promotional materials bearing any Prohibited Marks that were distributed to third parties.

3)  Directing such other relief as the Court may deem appropriate to prevent the relevant public and the industry from deriving the erroneous impression that any goods or services offered for sale, sold, or otherwise circulated or promoted by Defendant are authorized

by Plaintiff or related in any way to Plaintiff and/or Plaintiff's goods or services, or that Defendant is otherwise affiliated with Plaintiff.

4)   Directing Defendant to file with the Court and serve on counsel for Plaintiff within thirty (30) days after entry of judgment, a sworn written statement setting forth in detail the manner and form in which each Defendant has complied with paragraphs 1, 2, and 3 above.

5)   Awarding Plaintiff such damages that it has sustained or will sustain by reason of Defendant's unlawful conduct.

6)   Directing Defendant to account for and pay to Plaintiff its profits, gains, property and advantages attributable to Defendant's unlawful conduct.

7)   Pursuant to 15 U.S.C. § 1117(a), awarding Plaintiff an amount up to three times the amount of actual damages sustained as a result of Defendant's violations of the Lanham Act.

8)   Awarding Plaintiff the costs of this action including reasonable attorneys' fees pursuant 15 U.S.C. § 1117 and/or applicable state law.

9)   Awarding Plaintiff punitive and/or enhanced damages as provided for under applicable law.

10)   Awarding Plaintiff interest, including pre-judgment interest, on the foregoing sums.

11)   Granting Plaintiff such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands trial by jury on all issues so triable as a matter of law.

Dated:  New York, New York
   July 28, 2020

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____

  Leo Kittay (lkittay@fzlz.com)
  Laura Popp-Rosenberg (lpopp-rosenberg@fzlz.com)
  Daniel Nuzzaci (dnuzzaci@fzlz.com)
151 West 42nd St., 17th floor
New York, NY  10036
Tel:  (212) 813-5900

*Attorneys for Plaintiff Overtime Sports, Inc.*